OPINION
{¶ 1} Defendant-appellant/cross-appellee, Joseph Kelley, appeals a decision of the Butler County Court of Common Pleas, Domestic Relations Division, which ordered him once again, upon remand from this court, to pay $179,578 to plaintiff-appellee/ cross-appellant, Beverly Kelley nka Hingsbergen, but which failed to calculate the tax consequences of the order in violation of this court's remand instructions.
 {¶ 2} The parties were divorced in 2000. Kelley is the 50 percent owner of a closely-held corporation, MTP, Inc. Kelley's MTP stock is entirely held in his Individual Retirement Account ("IRA"). As part of the division of assets, the parties stipulated that Hingsbergen would receive the marital house with an equity of $130,844. On November 15, 2000, the trial court ordered Kelley to pay Hingsbergen a portion of the value of his interest in the MTP stock with a setoff for the value of the equity Hingsbergen received for the marital house. The trial court relied upon the opinion of Hingsbergen's expert who found the stock in the IRA to be valued at $490,000. As a result, Kelley was ordered to pay Hingsbergen $179,578 in a lump sum within one year or in installment payments over five years at nine percent interest.
 {¶ 3} Kelley filed a motion for reconsideration in which he challenged the trial court's failure to consider the tax consequences of the property division. Kelley claimed that the only way he could pay the $179,578 was by selling his MTP stock. Kelley asserted that he would incur a tax rate of 53 percent, including a ten percent penalty, for taking the funds out of his IRA before he turned 59. On March 2, 2001, the trial court denied Kelley's motion for reconsideration. The trial court stated that a court need not consider tax consequences that are speculative. The trial court found that Kelley intended to continue working for MTP, that there was no evidence that the property award had the effect of forcing him to dispose of his stock to meet his property division obligation, and that therefore Kelley was only speaking of speculative tax. The trial court further stated that if Kelley did have to sell the stock, then the tax liability was to be shared equally between the parties.
 {¶ 4} Kelley appealed to this court, arguing that the trial court had erred by refusing "to take into account the tax liability that [he] will have to incur in order to comply with the trial court's order" to pay $179,578 to Hingsbergen. Again, Kelley asserted that he would incur heavy tax penalties for taking the money from his IRA account, and that these tax consequences would cause him to have to sell nearly all of his stock in order to pay Hingsbergen.
 {¶ 5} On May 13, 2002, we reversed in part the trial court's decision. We agreed with the trial court that tax consequences of a property division are proper considerations for a trial court as long as those consequences are not speculative. Unlike the trial court, however, we found that the tax consequences of the property division were not speculative:
 {¶ 6} "The record shows that Kelley's only assets are his MTP stock, an $82,000 salary, less than $300 in his bank accounts, a Harley-Davidson motorcycle, and the items in garage. Therefore, in order to make the payment, he will have to sell his MTP stock. To make the payment from the stock proceeds, he must remove the money from his IRA. By removing the money, he will incur tax consequences. *** These tax consequences are not speculative." By judgment entry filed the same day, we remanded the matter to the trial court "with instructions to determine the tax consequences of selling the MTP stock and removing the money from the IRA."
 {¶ 7} On remand, over Kelley's objections, the trial court ordered the matter to "be set for further hearing where additional evidence shall be offered on the issue of the tax consequences of the sale of the MTP stock. The Court will also consider testimony as to whether the sale of the MTP stock is necessary in order to effectuate a property division." A hearing was held during which Kelley's expert testified, inter alia, that there would be no consequences from a sale of the MTP stock unless and until the stock would be withdrawn from the IRA. Kelley once again testified he intended to continue (1) working for MTP until retirement, (2) holding the MTP stock, and (3) holding it in the IRA.
 {¶ 8} On January 9, 2003, the trial court found that the parties' situation had changed since the original order, in that Hingsbergen was no longer receiving $2,000 a month in spousal support due to her cohabitation; Kelley and his business partner had voluntarily reduced their salaries from MTP (Kelley's salary was now $40,000 a year); despite MTP's heavy debt load, the business continued to improve; and Kelley had inherited $75,000 for which he was unable to give an accurate accounting. The trial court found that Kelley's testimony he had no funds and was unable to pay Hingsbergen lacked credibility. Noting that Kelley had no intention of selling his stock in MTP, and that he planned on retaining his interest in the company and continuing to work there, the trial court held:
 {¶ 9} "In considering the tax consequences of a sale of MTP, the Court first finds that Mr. Kelley has the wherewithal to pay the Court ordered property division without resorting to a sale of his stock and Mr. Kelley has no plans to sell his stock. Consequently, the Court finds that those tax consequences are speculative. Mr. Kelley shall pay Ms. Hingsbergen *** $179,578.00 as her share of MTP. That amount shall be paid in installments of [$2,000] monthly until the obligation is paid in full.
 {¶ 10} "The Court does acknowledge Mr. Kelley's argument that Ms. Hingsbergen is receiving after tax asset in the form of the marital real estate, while he is receiving pre-tax asset of the MTP stock held in his 401K [sic]. In consideration of this factor, the Court will not impose interest upon his obligation to pay [$179,578] so long as his installments payments remain current. In the event he becomes delinquent in his payments, the balance will carry simple interest at the rate of 8% per year."
 {¶ 11} Kelley filed this appeal in which he raises as his assignment of error that the trial court erred by refusing to determine the tax consequences of selling the MTP stock and removing the money from his IRA, in direct violation of this court's specific remand instructions. Kelley asserts that pursuant to the doctrine of the law of the case, the trial court was bound by this court's determination that the tax consequences were not speculative, and was required to calculate the tax consequences of selling the MTP stock.
 {¶ 12} The doctrine of the law of the case "provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." Nolan v. Nolan (1984),11 Ohio St.3d 1, 3. "Thus, where at a rehearing following remand a trial court is confronted with substantially the same facts and issues as were involved in the prior appeal, the court is bound to adhere to the appellate court's determination of the applicable law. *** Moreover, the trial court is without authority to extend or vary the mandate given." Id. at 3-4. The doctrine is considered to be "a rule of practice rather than a binding rule of substantive law and will not be applied so as to achieve unjust results." Id. at 3.
 {¶ 13} At first blush, we are troubled by the trial court's determination on remand that the tax consequences of the property division were not speculative. In our May 13, 2002 decision, we determined that the tax consequences resulting from the property division were not speculative. This determination was based upon our earlier and erroneous determination that Kelley was required to sell the stock in order to satisfy his obligation. As the dissent pointed out, however, while the trial court had ordered Kelley to pay $179,578 to Hingsbergen, it had not ordered Kelley to sell his stock to satisfy his obligation. Nor was there evidence, apart from Kelley's own assertion, that the property award had the effect of forcing him to sell the stock to satisfy his obligation. In the instant appeal, the record shows once again that Kelley has no intention to sell the stock, and that in all likelihood, he never will (at least until he retires). Under those circumstances, the tax consequences of selling the MTP stock and removing the money from the IRA can only be speculative.
 {¶ 14} With regard to the trial court's alleged failure to determine the tax consequences, we find that it did indeed determine them. We remanded the matter to the trial court with instructions to determine the tax consequences of selling the MTP stock and removing the money from the IRA. Because Kelley has clearly testified that he will not sell the stock, those tax consequences amount to $0. By finding those tax consequences to be speculative, the trial court implicitly determined them to equal $0. While such determination may not be what Kelley had in mind, it remains that the trial court did determine the tax consequences of the property division as required on remand. Kelley's assignment of error is accordingly overruled.
 {¶ 15} Hingsbergen cross-appealed and raises as her assignment of error that the trial court erred by failing to award her interest on the $179,578 property division award. Hingsbergen asserts that she is entitled to a ten percent interest per year under R.C. 1343.03(A).
 {¶ 16} As a general rule, the decision to award interest on obligations arising from a division of marital property lies within the sound discretion of the trial court. Koegel v. Koegel (1982),69 Ohio St.2d 355, syllabus. "A property award without interest may sometimes be inequitable, but it is not always so." Id. at 357.
 {¶ 17} R.C. 1343.03(A) provides in relevant part that "when money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate of ten per cent per annum, and no more[.]" In Koegel, the Ohio Supreme Court declined to address the applicability of R.C. 1343.03 to property divisions. Instead, the supreme court simply noted that the statute applies "only to obligations that are due and payable, and the obligation here [a $9,200 note executed by the wife due and payable in five years] will not become due an payable until the occurrence of a future event." Id. at 357.
 {¶ 18} Appellate opinions rendered since Koegel have held that R.C. 1343.03 applies to judgments rendered in domestic relations proceedings, if the judgment is reduced to an amount "due and payable," as opposed to an amount, like in Koegel, deferred for payment. See Warner v.Warner (Feb. 27, 1998), Wood App. No. WD-97-095; Woloch v. Foster
(1994), 98 Ohio App.3d 806. Other appellate opinions have taken the position that interest should be awarded on judgments for spousal and child support arrearages. See Allen v. Allen (1990), 62 Ohio App.3d 621;In re Hammond (1992), 78 Ohio App.3d 170; Heavenridge v. Heavenridge
(Sept. 21, 1983), Clinton App. No. CA-479.
 {¶ 19} Notwithstanding the foregoing cases, we find that R.C.1343.03(A) does not apply to the case at bar. The case does not involve a bond, bill, note, or other instrument in writing. Nor does it involve a book account, a settlement, or a verbal contract. While it does involve an order for the payment of money, such payment does not arise out of tortious conduct, a contract, or a transaction. Hingsbergen is therefore not entitled to a ten percent interest as a matter of law under R.C.1343.03(A). Turning to the trial court's award of an eight percent interest on the balance of $179,578 should Kelley become delinquent in his monthly payments, in light of Koegel, we find no abuse of discretion. The trial court's decision is not unreasonable, arbitrary, or unconscionable. Hingsbergen's assignment of error is accordingly overruled.
 Judgment affirmed.
WALSH and POWELL, JJ., concur.